UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER BROWN,

    Petitioner,

v.                                              Case No. 8:25-cv-1685-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

    Christopher Brown, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 9). Mr. Brown filed a reply. (Doc. 11). After careful review, the petition is **DENIED**.

**I.    Background**

    On the evening of March 25, 2019, an officer with the Sarasota Police Department spotted a suspicious vehicle in front of a housing complex. (Doc. 10-1, Ex. 6, at 23). The car was parked "diagonally" "across multiple parking spaces," and the officer had "never seen it before" in the area. (*Id.*) He exited his patrol car and walked toward the vehicle. (*Id.* at 26-27). As he approached, the officer "smell[ed] the distinct odor of . . . burnt marijuana." (*Id.* at 27). He shined a flashlight into the car, and one of the occupants rolled down the front passenger window. (*Id.*) The officer again smelled "burnt marijuana"; this

time the "odor" was "a lot stronger." (*Id.*) He also saw what appeared to be a "marijuana cigarette in the cupholder of the center console." (*Id.*)

Mr. Brown sat in the back of the car, and two women sat in front. (*Id.* at 33). The officer told the occupants to stay in the vehicle, but Mr. Brown "began to exit." (*Id.* at 28). He "pushed past" the officer and "tried to flee," saying, "[T]his isn't my f*cking car." (*Id.*) The officer grabbed Mr. Brown, and a struggle ensued. (*Id.* at 29). Another officer arrived, whereupon Mr. Brown was taken to the ground and handcuffed. (*Id.*) A search of Mr. Brown's bag revealed a "large amount of narcotics and a firearm." (*Id.* at 34). He was charged with armed trafficking in eutylone,[1] possession of a firearm by a convicted felon, carrying a concealed firearm, possession of marijuana and drug paraphernalia, and resisting an officer without violence. (*Id.*, Ex. 3).

While he was out on bond, Mr. Brown committed additional offenses. Around 3:50 a.m. on December 30, 2020, an officer with the Sarasota Police Department responded to a call about a "vehicle sitting in [a McDonald's] drive-through for thirty-plus minutes." (*Id.*, Ex. 20, at 7-8). The officer approached the car on foot and saw Mr. Brown "unconscious" in the driver's seat with a "semi-automatic style handgun in [his] lap." (*Id.* at 9). As the officer began to radio for backup, Mr. Brown woke up, "immediately" grabbed the handgun, and made "furtive movements to try to conceal it." (*Id.* at 10). He eventually "let[] go of the gun" and exited the vehicle. (*Id.* at 11). Mr. Brown was arrested and charged

---

[1] "Eutylone is a synthetic drug that has similar psychoactive effects on the body to drugs like methamphetamine, MDMA, and cocaine." *Curtis v. State*, No. 1642, 2022 WL 16986639, at *2 (Md. Ct. Spec. App. Nov. 17, 2022).

with possession of a firearm by a convicted felon and possession of a firearm with an altered serial number. (*Id.*, Ex. 17).

Mr. Brown moved to suppress all evidence obtained during the March 2019 and December 2020 incidents. (*Id.*, Exs. 4-7, 9, 10-11, 18-21). Both motions were denied after evidentiary hearings. (*Id.*, Exs. 6-7, 9, 20-21). In addition, Mr. Brown unsuccessfully moved to dismiss the charge for resisting an officer without violence. (*Id.*, Ex. 4; Ex. 7 at 16).

Mr. Brown ultimately resolved all charges by pleading *nolo contendere*. (*Id.*, Exs. 14, 22; *see also id.*, Ex. 12, at 27; Ex. 22, at 3-4). He received a total sentence of ten years' imprisonment. (*Id.*, Exs. 15, 25). This represented the mandatory minimum for armed trafficking in eutylone, the most serious offense Mr. Brown committed. (*Id.*, Ex. 26, at 69-74). Mr. Brown appealed his convictions, and the Second District Court of Appeal affirmed in unexplained decisions. (*Id.*, Exs. 32, 35). This federal habeas petition followed. (Doc. 1).

## II.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The Second District Court of Appeal affirmed Mr. Brown's convictions without discussion. This decision warrants deference under § 2254(d)(1) because "the summary

4

nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

### B.      Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## III.   Discussion

### A.   Ground One—Denial of Motion to Suppress

Mr. Brown argues that the trial court erred in denying his motion to suppress evidence obtained during the March 2019 incident. (Doc. 1 at 5). As noted above, this search led to the recovery of eutylone, marijuana, drug paraphernalia, and a firearm. (Doc. 10-1, Ex. 3; Ex. 6, at 34). According to Mr. Brown, the search violated the Fourth Amendment because the "smell of marijuana coming from the vehicle, standing alone, [did] not provide reasonable suspicion of criminal activity." (Doc. 1 at 5; *see also* Doc. 10-1, Ex. 30, at 12-19).

This claim is not cognizable on federal habeas review. "[F]ederal habeas courts are precluded from addressing Fourth Amendment exclusionary claims that have had a full and fair opportunity for litigation in the state courts." *Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)). An opportunity for "full and fair" litigation "includes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute." *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008). Mr. Brown received that opportunity, litigating his suppression motion at an evidentiary hearing and challenging its denial on

appeal. (Doc. 10-1, Exs. 6-7, 9-11, 30, 32). Thus, Mr. Brown cannot obtain federal habeas review of his Fourth Amendment claim.[2]

### B. Ground Two—Denial of Motion to Dismiss Charge of Resisting Officer Without Violence

As noted above, Mr. Brown was charged with resisting an officer without violence based on his conduct during the March 2019 incident. (Doc. 10-1, Ex. 3). He argues that the trial court "erred in denying" his motion to dismiss the resisting charge because "the officer was not engaged in the lawful execution of his legal duties at the time of the alleged resisting." (Doc. 1 at 7).

Even under *de novo* review, this claim lacks merit. First, it is not cognizable on federal habeas review because it rests on an alleged misapplication of Florida law. "[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005). Thus, "a habeas petition grounded on issues of state law provides no basis for habeas relief." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Mr. Brown filed his motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4), which "provides for dismissal of a charge against a defendant when '[t]here are no material disputed facts and the undisputed facts do not establish a *prima facie* case of guilt against the defendant.'" *State v. Yarn*, 63 So. 3d 82, 84 (Fla. 2d DCA 2011) (quoting Fla. R. Crim. P. 3.190(c)(4)). Whether the trial court erred in applying this standard "is a question of state law." *Clark v.*

---

[2] To the extent Mr. Brown also seeks to challenge the denial of his motion to suppress evidence obtained during the December 2020 incident, any such claim is also foreclosed from federal habeas review.

7

*Sec'y, Dep't of Corr.*, No. 8:18-cv-2670-MSS-AEP, 2022 WL 485229, at *15 (M.D. Fla. Feb. 17, 2022); *see also Noel v. Inch*, No. 19-60373-CV, 2020 WL 906978, at *5 n.7 (S.D. Fla. Feb. 3, 2020) (claim that trial court erred in denying motion to dismiss under Rule 3.190(c)(4) "is not cognizable" on federal habeas review), *adopted by* 2020 WL 905223 (S.D. Fla. Feb. 25, 2020).

Second, even if it were cognizable, Mr. Brown's claim would fail on the merits because "the State's evidence was sufficient to establish a *prima facie* case" of resisting an officer without violence. *State v. Williamson*, 348 So. 3d 48, 51 (Fla. 5th DCA 2022). "To support a conviction [for resisting an officer without violence], the State must show: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty."[3] *Mosley v. State*, 739 So. 2d 672, 675 (Fla. 4th DCA 1999). The "element of a lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrantless arrest." *I.B. v. State*, 239 So. 3d 773, 775 (Fla. 3d DCA 2018). "Stated another way, if the officer does not have a founded suspicion to stop an individual, that individual does not commit the offense of resisting an officer without violence by simply walking away from the officer or by ignoring his command to stop." *Id.*

Mr. Brown contends that "the officer was not engaged in the lawful execution of his legal duties at the time of the alleged resisting." (Doc. 1 at 7). But the officer testified that, when he approached the vehicle in which Mr. Brown was a passenger, he "smell[ed] the

---

[3] Mr. Brown does not dispute that the evidence supported the second element of the offense—namely, that his conduct "constituted obstruction or resistance." *Mosley*, 739 So. 2d at 675.

distinct odor of . . . burnt marijuana."[4] (Doc. 10-1, Ex. 6, at 27). The "smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010); *see also United States v. Roberts*, 849 F. App'x 863, 866 (11th Cir. 2021) ("[T]he smell of marijuana alone can provide reasonable suspicion for an investigatory stop."). Thus, the "element of a lawful execution of a legal duty [was] satisfied" because the officer had "a founded suspicion to stop" Mr. Brown upon detecting the smell of marijuana. *I.B.*, 239 So. 3d at 775. The trial court correctly rejected Mr. Brown's argument for dismissing the charge of resisting an officer without violence.[5]

### C. Ground Three—Ten-Year Mandatory Minimum for Armed Trafficking in Eutylone

Florida law "provides for a minimum mandatory sentence of ten years for armed trafficking" in certain illegal drugs. *Magana v. State*, 846 So. 2d 1231 (Fla. 2d DCA 2003); *see also* Fla. Stat. § 775.087(2)(a)1p. Mr. Brown was sentenced under this law, receiving the mandatory minimum of ten years' imprisonment for armed trafficking in eutylone. (Doc. 10-1, Ex. 26, at 72). He contends that his ten-year sentence violated the Eighth Amendment because it constituted "cruel and unusual punishment." (Doc. 1 at 8).

---

[4] The officer's initial approach to the vehicle did not constitute a seizure under the Fourth Amendment. *See United States v. Colvin*, 822 F. App'x 956, 959 (11th Cir. 2020) ("A police officer does not seize an individual merely by approaching the person in a parked car.").

[5] In his memorandum of law, Mr. Brown asserts that the "habitual felony offender statute" and the "prison releasee reoffender statute" are "unconstitutional." (Doc. 1 at 21). Respondent correctly contends that this claim is unexhausted and procedurally defaulted because it was never raised in state court. (Doc. 9 at 13). Regardless, the claim lacks merit because Mr. Brown was not sentenced as a habitual felony offender or a prison releasee reoffender. (Doc. 10-1, Exs. 15, 25-26).

Mr. Brown raised this argument on direct appeal, and the Second District Court of Appeal rejected it without explanation. (Doc. 10-1, Ex. 30, at 27-34). Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. In this situation, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision." *Id.* at 102.

Mr. Brown cannot show that "there was no reasonable basis for the state court to" reject his Eighth Amendment challenge. *Id.* at 98. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003). "[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment, and [] successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 22. "[A] reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005). ''In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *Id.* Moreover, "the mandatory nature of a non-capital penalty is irrelevant for proportionality purposes." *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010).

10

For armed trafficking in eutylone, Mr. Brown faced a mandatory minimum of ten years' imprisonment and a statutory maximum of life. Fla. Stat. §§ 775.087(1)(a), 775.087(2)(a)1p, 893.135(1)(k)1. His ten-year sentence thus fell "within the limits imposed by statute," which weighs against finding that it violated the Eighth Amendment. *United States v. Flores*, 572 F.3d 1254, 1268 (11th Cir. 2009). Next, the appellate court could reasonably have concluded that the ten-year sentence was not "grossly disproportionate to the offense committed." *Moriarty*, 429 F.3d at 1024. The Supreme Court has "set a high bar for a sentence to be 'grossly disproportionate,'" holding in one case that "a sentence of life without parole was not grossly disproportionate for a first-time offender convicted of cocaine possession." *United States v. Bowers*, 811 F.3d 412, 432 (11th Cir. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Given this precedent, a reasonable jurist could conclude that a ten-year sentence for armed trafficking in eutylone did not violate the Eighth Amendment.[6] *See Harmelin*, 501 U.S. at 1002 ("Possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population."); *United States v. Pizarro-Campos*, 506 F. App'x 947, 951 (11th Cir. 2013) (rejecting Eighth Amendment challenge to ten-year sentence for "conspiracy to possess with the intent to distribute methamphetamine," an offense that "threatened grave harm to society").

---

[6] In his memorandum of law, Mr. Brown argues that the trial court erred in denying his request for a downward departure. (Doc. 1 at 23). As Respondent notes, this argument is unexhausted and procedurally defaulted because Mr. Brown did not raise it on direct appeal. (Doc. 9 at 13; Doc. 10-1, Ex. 30). Even if it were exhausted, the claim cannot support federal habeas relief because it rests entirely on an alleged misapplication of Florida law. *See Branan*, 861 F.2d at 1508 ("In the area of state sentencing guidelines in particular, [the Eleventh Circuit] consistently ha[s] held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." (collecting cases)).

11

### D. Ground Four—Denial of Motion to Dismiss Charge of Possession of a Firearm by a Convicted Felon

Lastly, Mr. Brown contends that the trial court erred in denying his motion to dismiss the "charge of possession of a firearm by a convicted felon." (Doc. 1 at 10). As noted above, Mr. Brown faced two felon-in-possession counts arising from two separate incidents. (Doc. 10-1, Exs. 3, 17). In his petition, Mr. Brown does not specify which felon-in-possession count should have been dismissed. (Doc. 1 at 10, 25). On direct appeal, however, he argued that the trial court should have dismissed the felon-in-possession charge arising from the December 2020 incident at the McDonald's in Sarasota.[7] (Doc. 10-1, Ex. 34, at 13-14, 23-26). It thus appears that Mr. Brown seeks to renew this claim in his petition.

Regardless of how it is construed, the claim fails under *de novo* review because Mr. Brown never asked the trial court to dismiss either of the felon-in-possession charges. Instead, as discussed above, he moved only to dismiss the charge of resisting an officer without violence. (*Id.*, Ex. 4). The trial court can hardly be faulted for failing to dismiss charges that Mr. Brown never asked it to dismiss. In any event, the claim cannot support federal habeas relief because it turns on a question of state law—whether the court should have dismissed charges under Florida Rule of Criminal Procedure 3.190(c)(4). *See Noel*, 2020 WL 906978, at *5 n.7. As explained above, a claim "grounded on issues of state law provides no basis for habeas relief." *Branan*, 861 F.2d at 1508. Finally, Mr. Brown waived

---

[7] Mr. Brown proceeded *pro se* in his direct appeal of the convictions stemming from the December 2020 incident. (Doc. 10-1, Ex. 34).

his challenge to the felon-in-possession charges by pleading *nolo contendere*.[8] *See Martin v. Kemp*, 760 F.2d 1244, 1246 (11th Cir. 1985) ("A defendant who knowingly and voluntarily enters a plea of guilty [or *nolo contendere*] waives all nonjurisdictional challenges to his conviction."); *Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (under Florida law, "a plea of *nolo contendere* is equivalent to a plea of guilty"); *see also United States v. Arnaiz*, 144 F. App'x 27, 31 (11th Cir. 2005) ("With regard to [defendant's] motion to dismiss the indictment, because he voluntarily pleaded guilty with the advice of competent counsel, he has waived any nonjurisdictional challenges to his indictment.").

## IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Brown's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Brown and to **CLOSE** this case.

3. Mr. Brown is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Brown must show that reasonable jurists would find debatable both the merits of the

---

[8] In his plea agreement, Mr. Brown reserved the right to appeal the denial of his motions to suppress and the denial of his motion to dismiss the charge of resisting an officer without violence. (Doc. 10-1, Exs. 14, 24). But he did not reserve the right to challenge any ruling with respect to the felon-in-possession counts, presumably because he never moved to dismiss those charges. (*Id.*)

underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Brown has not made the requisite showing. Because Mr. Brown is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on December 9, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE